UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Crim. No. 00-CR-008 (TFH) |
| | : | |
| v. | : | |
| | : | |
| GIDDION LEWIS | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons herein, the United States requests that the Court accept the Rule 11 (c)(1)(C) plea to a sentence of 33 months of incarceration, to be followed by three years of supervised release. The government is not requesting any fines or restitution in this case, other than required court costs. In support of this sentence, the government states the following.

**FACTUAL AND PROCEDURAL BACKGROUND**

In the Summer of 1999, information came to the attention of the Metropolitan Police Department ("MPD") that defendant Giddion Lewis was selling crack cocaine in southwest D.C. Members of the DEA/HIDTA Task Force decided to have a confidential source contact defendant Lewis to attempt to make a drug purchase. On July 16, 1999, a confidential source (CS) called and later met with defendant Lewis on July 26, 1999 to purchase 62 grams of cocaine for $2,000. The CS and Lewis drove to a location where Lewis met with another male and obtained the cocaine which he then sold to the CS. The call and transaction was recorded. The pattern above was repeated another four times. On July 30, 1999, the CS along with an undercover officer met with Lewis and purchased another 62 grams of cocaine for $2,000. This

buy was also recorded. On September 22, 1999, the CS along with an undercover officer met with Lewis to complete a pre-scheduled purchase of another 62 grams of cocaine. However, Lewis indicated he did not have the drugs that day. The call and discussions with defendant were recorded. On October 6, 1999, the CS and undercover officer met with Lewis to buy 62 grams of cocaine for $2,000. This buy was recorded. On December 8, 2019, the CS and undercover bought another 62 grams of cocaine for $2,000. Lewis was arrested after this transaction.

     After his arrest, Lewis waived his rights and admitted to the drug sales described above. In addition, he provided officers with information regarding his supplier(s). In January of 2000, defendant Lewis entered into a cooperation agreement and pled guilty to a three count information which charged him with distribution and possession with intent to distribute crack cocaine base in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A)(iii). Back then the penalty for these offenses was a mandatory minimum sentence of 10 years, maximum sentence of life imprisonment and a fine up to $4,000.000 and a 5 year term of supervised release. The January 13, 2000, plea paperwork stated that "pursuant to Section 1B1.3 of the Sentencing Guidelines, [the defendant was] accountable for the distribution of 50 but less than 150 grams of a mixture and substance containing cocaine base" and that such quantity placed him at a base offense level of 32 pursuant to section 2D1.1. This quantity, approximately 123 grams, "represents the aggregate quantity of cocaine base which was distributed and/or possessed with intent to distribute attributable" to the defendant. *Id*. The three counts defendant Lewis pled to were:

> Count 1: On or about July 30, 1999, within the District of Columbia, GIDDION LEWIS, did unlawfully, knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack, a Schedule II narcotic drug controlled substance, and the amount of said mixture and

substance was 50 grams or more .(Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii))

Count 2: On or about October 7, 1999, within the District of Columbia, GIDDION LEWIS, did unlawfully, knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack, a Schedule II narcotic drug controlled substance, and the amount of said mixture and substance was 5 grams or more. (Unlawful Distribution of 5 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(I)(B)(iii))

Count 3: On or about December 8, 1999, within the District of Columbia, GIDDION LEWIS, did unlawfully, knowingly and intentionally distribute a mixture and substance containing a detectable amount of cocaine base, also known as crack, a Schedule II narcotic drug controlled substance, and the amount of said mixture and substance was 50 grams or more. (Unlawful Distribution of 50 Grams or More of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(iii)).

After he pled on January 13, 2000, the government moved to release the defendant so he could work off his charges. The defendant was instructed to meet with pre-trial and with investigators. Defendant met with officers right after he was released and then he disappeared, failing to report. The government moved for a bench warrant given the breach of the cooperation agreement which this Court issued on February 28, 2000. The defendant was not located until August 24, 2019. At that time the defendant was in a vehicle entering the United States from Mexico. When Lewis acted strangely at the Port of Entry officers became suspicious that the identification presented by defendant Lewis was fake (it was in fact, Lewis presented an ID under name James Dwight). Lewis was fingerprinted and identified and the bench warrant showed up. Lewis was then brought to the District of Columbia from California.

Defendant Lewis, through his counsel, reached out in an attempt to resolve the case which at this point is 19 years old. The government in its exercise of prosecutorial discretion reached an amended plea agreement taking into consideration defendant's desire to resolve the

3

matter, the age of the case and the state of the evidence, the potential litigation risks assessed by both the defendant and the government, the defendant's criminal history, and consideration of judicial resources.

On February 13, 2000, the defendant entered into an amended plea agreement. Under the terms of the amended plea agreement, in exchange for an agreement to a Rule 11 (c)(1)(C) sentence of 33 months of incarceration as to Count 2, the government agreed to dismiss Counts One and Three at the time of sentencing. The amended plea agreement noted that the sentences for cocaine were revised in 2000 and Unlawful Distribution of 5 Grams or More of Cocaine Base has been re-codified to 21 USC § 841(b)(1)(C). When Mr. Lewis pled in January of 2000, Count Two carried a mandatory minimum of five years imprisonment. Presently, Count Two does not carry a mandatory minimum because Congress amended the amount of cocaine base needed to trigger a five-year mandatory minimum under the Fair Sentencing Act of 2010.

## II.     Defendant's Sentencing Guidelines Calculation

### A.     Total Offense Level

The guideline for 21 USC § 841(a)(1) offenses is found in USSG §2D1.1 of the guidelines. That section provides that an offense involving at least 112 grams but less than 196 grams (136.2 grams) of cocaine base has a base offense level of 26. USSG §2D1.1(a)(5) and (c)(7). Because Defendant Lewis has accepted responsibility at an early juncture of the case and as agreed upon by the amended plea agreement (February 11, 2020), the base offense level is reduced by a total of three points, resulting in a total offense level of 25. *See* PSR ¶ 21 (citing U.S.S.G. §§ 3E1.1(a)); Amended Plea Agreement (February 11, 2020 ¶5.

### B.     Criminal History Category

As set forth in paragraphs 32 and 33 of the Final PSR, Defendant Lewis has the following prior convictions: (1) an August 3, 1999, sentence for Possession of Marijuana (Case No. 1999-

FEL-002749) in which Defendant Lewis was sentenced to 6 months of probation. Under U.S.S.G. § 4A1.1(c) this conviction results in 1 point; (2) an October 29, 1999, sentence for simple assault (1999-CMD-011010) in which Defendant Lewis entered into a deferred sentencing agreement. Under U.S.S.G. § 4A1.1(c) and § 4A1.2(f) this conviction results in 1 point. *See* PSR ¶¶ 32-33. The defendant committed the instant offense while under a criminal justice sentence in Case# 1999-FEL-002749; therefore, two points are added. USSG §4A1.1(d). *Id*.at ¶35. The total criminal history score is four. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of four establishes a criminal history category of III.

### C. Sentencing Guideline Range

With a total offense level of 25 and a Criminal History that falls in Category III, Defendant Lewis' guidelines range is 70-87 months of incarceration. The Court may impose a term of supervised release of not more than three years.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

The parties have entered into a Rule 11(c)(1)(C) plea agreement that would result in the defendant receiving 33 months of incarceration for pleading to Count Two of the indictment. The government submits that the Court should accept the plea agreement as the plea serves legitimate criminal justice interests.

Section 3553 of the U.S. Code directs sentencing courts to "impose a sentence sufficient but not greater than necessary" to comply with the enumerated purposes of sentencing and to consider certain factors outlined in the statute. 18 U.S.C § 3553(a). That provision tells the sentencing judge to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the aims of sentencing, namely, (a) reflect the seriousness of the offense, promote respect for the law and provide "just punishment," (b) deterrence, (c) incapacitation, (d) rehabilitation; (3)

5

the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.  Id.

## II.     Sentencing Recommendation

As stated above, the government requests a sentence of 33 months of incarceration, to be followed by 3 years of supervised release.  The factors above support the imposition of this sentence.  The offense committed by Defendant Lewis occurred more than 19 years ago.  The evidence in the case, specifically the video and audio recordings, have been destroyed per DEA retention policies.  Although the drugs were analyzed 19 years ago, some of the laboratory analysts are no longer with the agency and it is not clear that they would be available for a potential trial.  Furthermore, the agents involved in the case have either retired or transferred to other agencies.  The time, energy, and resources (both judicial and prosecutorial) that would be spent getting this case ready for trial is not insignificant.  Although the posture of the case at the time the defendant was located in 2019 was pending sentencing, there are also litigation risks, discussed below, that were considered in reaching the amended plea agreement.  Furthermore, with regards to the nature of the offense, in the interim years since the defendant's offense  Congress has determined that the punishment for the conduct at issue should be reduced and it is no longer subject to any mandatory minimum. Such action reflects an updated view of the seriousness of the offense at issue.

Defendant Lewis has a limited criminal history consisting of two misdemeanors from 1999.  During the time defendant Lewis was on bench warrant status he did not have any arrests or convictions.  At the time of his offense, Defendant Lewis was a much younger man.  He is now 55 years old.

Defendant Lewis is a Jamaican citizen who is legally residing in the United States as a permanent resident.  However, based upon his conviction in the instant offense, he may be

amenable to removal proceedings for violations of the Immigration Act.  At the time of his original plea in 2000, it was not standard for plea agreements to contain language regarding the possible immigration consequences of the plea.  The current amended plea agreement (February 11, 2020) includes such language and the Court has advised defendant Lewis of these consequences in open court.  The government and defendant Lewis recognize that there is potential litigation risks for both sides if this case were not resolved.  For example, a motion to withdraw the defendant's guilty plea under *Padilla v. Kentucky* might be successful resulting in the case having to proceed to a trial 19 years later.[1]  Or such a motion might not be successful resulting in a sentence that would not serve the purposes of deterrence or rehabilitation as it would be imposed 19 years after the offense.  The current amended plea provides finality to the case and conserves resources while at the same time protecting the community.

Given the defendant's acceptance of responsibility in this case and his criminal history, the nature of the offense and the need to protect the community, the government believes that a sentence of 33 months of incarceration, to be followed by three years of supervised release is the appropriate sentence in this case.

                                              Respectfully submitted,
MICHAEL R. SHERWIN
ACTING UNITED STATES ATTORNEY
N.Y. Bar No. 4444188

By: *Veronica Sanchez*
Veronica Sanchez
FL Bar No. 0564591
Assistant United States Attorney
District of Columbia
555 4th Street, NW, Room 5832
Washington, DC 20530
(202) 252- 7518
Veronica.sanchez@usdoj.gov

---

[1] The government is not conceding or opining on the success of such a motion but raises this for the Court as it was one of the factors considered by the government and the defense in reaching the amended plea agreement.